UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------- x
                                             :

FIRE ISLAND NEWS, INC.       :

                      :    CASE NO.

    Plaintiff,         :

                      :

   -against-         :    COMPLAINT FOR

                      :   INJUNCTIVE RELIEF AND

SHF COMMERCE, LLC,     :      DAMAGES

   DAVID CAPO and John Doe :   WITH JURY DEMAND

                      :

    Defendants       :

------------------------------------------------- :

                      :

                      x

Plaintiff, FIRE ISLAND NEWS INC. (the "Plaintiff"), by and through its attorney, Harold G. Furlow, Esq., as and for its complaint against SHF COMMERCE, LLC, DAVID CAPO and JOHN DOE (cumulatively the "Defendants"), allege as follows:

## **NATURE OF THE ACTION**

1. This is an action in law and equity as a result of the Defendants' bad faith acquisition and cybersquatting of the domain names FIREISLANDNEWS.COM and THEFIREISLANDNEWS.COM (hereinafter the "FIRE ISLAND NEWS Domain Names"), the Defendants continuing unauthorized use of the Plaintiff's FIRE ISLAND NEWS® registered trademarks (hereinafter the "FIRE ISLAND NEWS® Marks"), FIRE ISLAND NEWS common law trademarks and the Defendants' unauthorized use of Plaintiff's *FIRE ISLAND NEWS* trade name so as to cause confusion and cause mistake and deceive the public as to the origin of the Defendants' printed newspaper and internet-based digital newspapers notwithstanding Plaintiff's prior demands that Defendants cease the use of the FIRE ISLAND NEWS Domain Names, FIRE

ISLAND NEWS® Marks, FIRE ISLAND NEWS common law trademarks and the *FIRE ISLAND NEWS* trade name.

2. Therefore, Plaintiff asserts claims against the Defendants for domain name cybersquatting of the FIRE ISLAND NEWS Domain Names under 15 U.S.C. §1125(d), trademark infringement of Plaintiff's FIRE ISLAND NEWS® Marks the under 15 U.S.C. §1114 et. seq. and the Lanham Act 15 U.S.C. §1125(a) for the Defendants' willful ongoing infringement, false designation of origin, misrepresentation of origin, deception as to affiliation, connection or association and confusion to consumers by the Defendants' use of the FIRE ISLAND NEWS® Marks and FIRE ISLAND NEWS common law trademarks in and/or in connection with advertisements, Uniform Resource Locators (URLs or web addresses), titles, headings and subheadings such as menu items of internet-based newspapers, printed and/or digital newspapers and newsletters.

3. Plaintiff also asserts a claim for declaratory judgment that Plaintiff is the senior user of the FIRE ISLAND NEWS common law trademarks, FIRE ISLAND NEWS® Marks and *FIRE ISLAND NEWS* trade name and that Plaintiff has superior rights over the Defendants to the FIRE ISLAND NEWS Domain Names and that the Defendants do not have a common law right to use web addresses that include the FIRE ISLAND NEWS Domain Names in commerce in connection with printed and/or digital newspaper related services and goods and for an order for the transfer of the rights to the FIRE ISLAND NEWS Domain Names from Defendants to Plaintiff.

## THE PARTIES

4. Plaintiff FIRE ISLAND NEWS INC. is a corporation organized and existing under the laws of New York with its principal place of business at 260 Montauk Highway, Suite 2, Bay Shore, New York 11706.

5. Defendant SHF COMMERCE, LLC (hereinafter "SHF") is a limited liability company existing under the laws of New York with its principal place of business at 68 South Service Road, Melville, New York 11747, upon information and belief David Capo has a personal address of 24 Juliet Lane, Northport, New York 11768 and upon information and belief, Defendant John Doe is an individual or a business entity affiliated with Defendants SHF Commerce, LLC and/or David Capo the identity and residence of which are currently unknown that upon information and belief may be the current owner of the FIRE ISLAND NEWS Domain Names.

## JURISDICTION AND VENUE

6. This action arises under and pursuant to the Lanham Act, 15 U.S.C. §1121, 28 U.S.C §1331, 28 U.S.C §1338(a), 28 U.S.C §1338(b), the Declaratory Judgment Act, pursuant to 28 U.S.C. §§2201 and 2202 and under the common law of trademark infringement and unfair competition.

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338(a) and 1338(b), because the events stated herein arise under the trademark and unfair competition laws of the United States. The court has supplemental jurisdiction over Plaintiff's New York statutory and common law claims pursuant to 28 U.S.C. §1367(a) because these claim are so related to Plaintiff's claims under federal law that they form a part of the same or controversy and derive from a common nucleus of operative fact.

3

8. The Court has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P., Rule 4(k)(1)(A) because Defendants SHF COMMERCE, LLC and DAVID CAPO are known to be located in and/or do business in the Eastern District of New York and upon information and belief Defendant JOHN DOE is located in and/or does business in the Eastern District of New York.

9. Venue in this action lies in the Eastern District of New York pursuant to 28 U.S.C. §1391(b) because Defendant SHF principal place of business, the residence of David Capo is in this District and upon information and belief the residence and/or principal place of business of John Doe is in this District, a substantial part of the events giving rise to the claims occurred in this District and the intellectual property that is the subject of this lawsuit is situated in this District.

## FACTUAL BACKGROUND

### *Plaintiff's Fire Island News Brands and Trademarks*

10. The FIRE ISLAND NEWS INC. and its predecessors have published the *FIRE ISLAND NEWS* as a seasonal biweekly printed newspaper since at least June 27, 1959.

11. The *FIRE ISLAND NEWS* has had a continuous presence on the internet since 2004 through FIRE ISLAND NEWS INC. and the predecessors of FIRE ISLAND NEWS INC.

12. FIRE ISLAND NEWS INC. and its predecessors have provided a continuous presence of the *FIRE ISLAND NEWS* on Facebook® since 2009.

13. FIRE ISLAND NEWS INC. began formally publishing the *FIRE ISLAND NEWS* as an internet-based year-round source of original news in 2018.

14. The predecessors of the FIRE ISLAND NEWS INC. have used the *FIRE ISLAND NEWS* as a common law trademark and as a tradename in commerce on the internet in

connection with news earlier in time than the predecessors of the Defendants used the FIRE ISLAND NEWS Domain Names in commerce on the internet.

15. FIRE ISLAND NEWS INC. has used the FIRE ISLAND NEWS as a common law trademark, the FIRE ISLAND NEWS® Marks and *FIRE ISLAND NEWS* as a tradename in commerce on the internet in connection with news earlier in time than the Defendants used the FIRE ISLAND NEWS Domain Names in commerce on the internet in connection with news.

16. FIRE ISLAND NEWS INC. acquired the *FIRE ISLAND NEWS* in 2014 and at that time the *FIRE ISLAND NEWS* printed newspaper and the *FIRE ISLAND NEWS* internet newspaper website was floundering. A new website was established in late 2014 using the domain FIREISLAND-NEWS.COM and then a second-generation website was launched in 2018 that expanded the *FIRE ISLAND NEWS* website and digital newspaper to a year-round internet newspaper publication. The historical original coverage provided by the *FIRE ISLAND NEWS* has not changed with an ongoing emphasis on the local news, current events and future events on Fire Island and the nearby communities along the Great South Bay of Long Island, New York.

17. True and correct copies of images of front pages of the *FIRE ISLAND NEWS* printed newspapers and internet website newspaper front pages from June 27, 1959 to the present are attached as Exhibit A.

18. FIRE ISLAND NEWS INC. is a media company encompassing all aspects of communications and owns the rights to the *FIRE ISLAND NEWS* as a printed newspaper, internet-based digital newspaper, Instagram® site and Facebook® page. FIRE ISLAND NEWS INC. is organized to seamlessly support the printed newspaper, internet newspaper website and social media. This integration accommodates the transfer of the original reporting, graphics and photographic content between media such as the traditional printed *FIRE ISLAND NEWS*

newspaper with the *FIRE ISLAND NEWS* internet newspaper website, Instagram and Facebook. For example, readers of the *FIRE ISLAND NEWS* printed newspaper readers are routinely referred to the *FIRE ISLAND NEWS* internet website to view videos and/or additional written content on the subject matter. The on-line *FIRE ISLAND NEWS* website includes historical digital copies of the printed *FIRE ISLAND NEWS* newspaper.

19. Plaintiff is the owner of two (2) Registered Trademarks for the goods of newspapers. Both trademarks assert a first use in commerce at least as early as June 27, 1959.

| TM Appln. No. TM Filing Date TM Reg. No. TM Reg. Date | Trademark | Goods and Services | First Use in Commerce |
|---|---|---|---|
| 88/452,842 5/30/2019 5942971 12/24/2019 |  FIRE ISLAND NEWS | IC 016 G & S: Newspapers | First Use: 19590627. First Use in Commerce: 19590627 |
| 88/563,906 8/26/2019 5887459 10/15/2019 | FIRE ISLAND NEWS | IC 016. G & S: Newspapers. | First Use: 19590627. First Use in Commerce: 19590627 |

20. Plaintiff asserts the common law rights to the FIRE ISLAND NEWS® Marks for newspapers back to at least as early as June 27, 1959 and acquired distinctiveness of the FIRE ISLAND NEWS® Marks based on the above long-standing and substantially exclusive use in commerce.

21. Plaintiff's *FIRE ISLAND NEWS* has been published on the internet since 2004 and prior to any "use" in commerce by the Defendants of *FIRE ISLAND NEWS* as a common law trademark or trade name for newspaper related goods and/or services.

22. Plaintiff asserts acquired distinctiveness of the common law trademark *FIRE ISLAND NEWS* in connection with newspaper related goods and/or services.

23. Plaintiff asserts acquired distinctiveness of the FIRE ISLAND NEWS Marks in connection with newspaper related goods and/or services.

24. True and correct current copies of the Registration Certificates downloaded from the United States Patent and Trademark Office website are provided in Exhibit B for Registration No's 5942971 and 5887459.

25. Plaintiff asserts common law business name rights to *FIRE ISLAND NEWS* based upon the use by Plaintiff and its predecessors in connection with printed newspapers and related goods and services since 1959 and digital newspaper related goods and/or services since 2004.

26. Plaintiff has invested over $175,000 to purchase and provide qualitative improvements to the *FIRE ISLAND NEWS* printed newspaper, digital newspaper and website since October of 2014.

27. Additional summer season and off-season operating costs are sizable because the *FIRE ISLAND NEWS* is now providing original content year-round. The staff of the *FIRE ISLAND NEWS* includes reporters, journalists, photographers, camera operators, journalists, graphic artists and editors that seamlessly support the printed and digital publications of the *FIRE ISLAND NEWS*. Routine operational expenses include, for example, each printed publication of the *FIRE ISLAND NEWS* has traditionally cost between $2,000 and $4,000. Each

bi-weekly issue of the *FIRE ISLAND NEWS* newspaper is then manually distributed throughout Fire Island and the Great South Bay region.

28. Plaintiff's trademark registrations and long standing use in commerce of the FIRE ISLAND NEWS® Marks constitute prima facia evidence of the validity of the FIRE ISLAND NEWS INC. right to exclusively use the FIRE ISLAND NEWS® Marks in commerce in connection with the goods and services designated and associated with newspapers.

29. Plaintiff filed trademark application serial no. 88/452,842 with the United States Patent and Trademark Office (USPTO) for the mark FIRE ISLAND NEWS on May 30, 2019 and the subsequent publication on the USPTO trademark database promptly thereafter provided constructive notice Defendants of FIRE ISLAND NEWS INC. ownership and exclusive rights in the FIRE ISLAND NEWS® Mark.

30. Plaintiff filed trademark application serial no. 88/563,906 with the United States Patent and Trademark Office (USPTO) for the mark FIRE ISLAND NEWS on August 2, 2019 and the subsequent publication on the USPTO trademark database promptly thereafter provided constructive notice Defendants of FIRE ISLAND NEWS INC. ownership and exclusive rights in the FIRE ISLAND NEWS® Mark.

31. Plaintiff's Uniform Domain Resolution Policy (UDRP) complaint 2019-3115 was served on the Defendants David Capo and SHF COMMERCE, LLC on January 3, 2020.

32. In the Defendants response to Plaintiff's UDRP complaint Defendant David Capo admitted his long-standing knowledge of the *FIRE ISLAND NEWS* prior to the acquisition of the FIRE ISLAND NEWS Domain Names on July 15, 2019, acknowledged notice of Plaintiff's FIRE ISLAND NEWS® Trademark Registration Certificate No.'s 5,942,842 and admitted

Defendants' bad faith intent to use the FIREISLANDNEWS.COM domain name as a competing internet based newspaper.

33. The UDRP 2019-3115 decision of March 5, 2020 denied the transfer to Plaintiff due to the recency of the acquisition of the FIRE ISLAND Domain Names on July 15, 2019 by Defendant SHF.

34. The daily operations of the FIRE ISLAND NEWS INC. are funded through the advertising in the printed newspaper and internet website newspaper. Defendants' have entered the newspaper marketplace, have begun soliciting advertising on infringing websites/webpages and are seeking to confuse the public, confuse advertisers and deceptively draw the viewing public and advertisers from Plaintiff's *FIRE ISLAND NEWS* to one or more of the Defendants' printed newspaper or digital newspaper publications.

35. As a result of Plaintiff's substantially exclusive use of the FIRE ISLAND NEWS® Marks and its marketing efforts, the printed *FIRE ISLAND NEWS* newspaper and internet-based digital *FIRE ISLAND NEWS* newspaper have established a long-standing presence in the Fire Island and Great South Bay communities. There is no other source of original content like the FIRE ISLAND NEWS® on Fire Island or in the communities of the Great South Bay.

**Defendants' Infringing Websites**

36. The Defendants acquired the FIRE ISLAND NEWS Domain Names (FIREISLANDNEWS.COM and THEFIREISLANDNEWS.COM domain names) from the prior owner on July 15, 2019 and for approximately ten (10) years preceding the Defendants' acquisition of the FIRE ISLAND NEWS Domain Names, the prior owner "parked" the FIRE ISLAND NEWS Domain Names to a static non-news directed websites.

37. The Defendants were aware on July 15, 2019 that Plaintiff had negotiated with the prior owner for the purchase of the FIRE ISLAND NEWS Domain Names.

38. On or before July 15, 2019 the prior owner of the FIRE ISLAND NEWS Domain Names gave notice to the Defendants that Plaintiff sent at least one enforcement letter asserting priority of rights over the FIRE ISLAND NEWS Domain Names.

39. Prior to the service of the UDRP Complaint 2019-3115 on January 3, 2020 upon Defendants, the first page of the Defendants' FIREISLAND.COM website was titled "Stay a while DISCOVERY FIRE ISLAND, NY" and had the following selectable menu items above the title at the top of the page:

**ARRIVE STAY PLAY EXPLORE EAT SHOP REAL ESTATE**

40. On or about January 17, 2020 Defendants revised the menu items at the top of the first page of the website at FIREISLAND.COM to add as the last term on the right "NEWS" as shown below.

**ARRIVE STAY PLAY EXPLORE EAT SHOP REAL ESTATE NEWS**

41. When the menu item "NEWS" was selected, a webpage titled FIRE ISLAND NEWS & MORE was displayed at the Defendants' new web address FIREISLAND.COM/FIRE-ISLAND-NEWS/. In response on January 24, 2020 Plaintiff sent an enforcement letter to the Defendants demanding that they cease the unauthorized use of Plaintiff's registered trademarks. A true and correct copy of the Defendants' FIRE ISLAND NEWS & MORE webpage downloaded on and dated February 23, 2020 located at the URL FIREISLANDNEWS.COM/FIRE-ISLAND-NEWS/ is attached as the first page in Exhibit C; and a true and correct copy of Plaintiff's enforcement letter of January 24, 2020 is attached in Exhibit C, second page.

42. Based upon information and belief, Defendants' website at FIREISLAND.COM and the *Fire Island Tide* print and internet newspapers merged on or about May 2020. A version of the *Fire Island Tide* has been published from the Defendants' web address http://FIREISLAND.COM/FIRE-ISLAND-NEWS. A true and correct copy of the *Fire Island Tide* webpage located at the URL FIREISLAND.COM/FIRE-ISLAND-NEWS downloaded on and dated July 30, 2020 is attached in Exhibit C.

43. An exemplary internet search using the Google search engine for Plaintiff's registered trademark FIRE ISLAND NEWS® will identify the Defendants' use of the FIRE ISLAND NEWS® registered trademark in the Defendants' advertising and in the Defendants' web addresses. A true and correct copy of a Google internet search downloaded on and dated July 30, 2020 is attached in Exhibit C and presented in part below:

> **fireisland.com>fire-island-news**
> **Fire Island News | The Exclusive | The Original**
> **Who We Are For over 30 years, the Fire Island Tide Newspaper has been the go-to source for news, information, entertainment, and gossip for residents, visitors, ...**

44. The selecting of the above-identified advertisement Fire Island News | The Exclusive | The Original sends the view to the first page of Defendants' webpage titled Fire Island Tide Newspaper, Inc. located at the web address http://FIREISLAND.COM/FIRE-ISLAND-NEWS/. A true and correct copy of the webpage at http://FIREISLAND.COM/FIRE-ISLAND-NEWS downloaded on and dated July 30, 2020 is provided in Exhibit C.

45. A true and correct copy of the HTML source code for the Defendants' Fire Island Tide webpage at the web address http://FIREISLAND.COM/FIRE-ISLAND-NEWS downloaded on and dated July 30, 2020 is also attached in Exhibit C and Plaintiff highlights therein the fourteen (14) uses of Plaintiff's FIRE ISLAND NEWS® and/or *FIRE ISLAND NEWS* trade name three (3) uses of the FIREISLANDNEWS.COM domain name in the HTML software coding

11

that include ad words, meta data and advertising titles to further promote and redirect viewers searching for the *FIRE ISLAND NEWS*.

46. On or about February 14, 2020 Defendants began using the web address http://FIREISLANDNEWS.COM/#/ as an active internet webpage for "news" titled *FIRE ISLAND NEWS & MORE*. A true and correct copy of the news webpage located at http://*FIRE ISLAND NEWS & MORE* downloaded on and dated February 23, 2020 is attached as the first page in Exhibit D. Upon information and belief, the *FIRE ISLAND NEWS & MORE* website provides news stories via a software service provider that culls news stories from internet sources and assembles those stories automatically into a newspaper format.

47. Continuing with the Defendants use of the web address http://FIREISLANDNEWS.COM/#/, the display of the first page of Defendants website titled "Stay a while Discovery Fire Island, NY" located at http://FIREISLAND.COM was revised on or about June of 2020 to use a new pull-down menu item titled "INFORMATION CENTER" that when selected included FIRE ISLAND NEWS as one of the menu item selections. Selecting FIRE ISLAND NEWS directed the viewer to the webpage titled "The Official News Journal of Fire Island" located at the web address http://FIREISLANDNEWS.COM/#/. True and correct copies of the Defendants' website located at http://FIREISLAND.COM downloaded on and dated August 4, 2020 are attached as the second and third pages in Exhibit D; a true and correct copy of the Defendants' webpage located at http://FIREISLANDNEWS.COM/#/ titled as "The Official News Journal of Fire Island" downloaded on and dated August 4, 2020 is attached as the fourth page in Exhibit D.

48. Plaintiff includes a true and correct copy of the HTML source code for the Defendants' webpage titled "The Official News Journal of Fire Island." located at

http://FIREISLANDNEWS.COM/#/ downloaded on and dated July 30, 2020 in Exhibit D that has two (2) uses of FIRE ISLAND NEWS® and three (3) uses of the Plaintiff's registered trademark FIRE ISLAND NEWS® as FIREISLANDNEWS.COM.

49. Defendants are not using the domain names FIREISLANDNEWS.COM and THEFIREISLANDNEWS.COM in commerce.

50. Defendants are or have been using Plaintiff's FIRE ISLAND NEWS® Marks in Defendants' web addresses without the consent of Plaintiff and Defendants are advertising "The Official News Journal of Fire Island" in association with the FIREISLANDNEWS.COM domain name so as to create a false association between Defendants and Plaintiff. Plaintiff attaches a true and correct copy of the Bing search for "fire island news" dated August 4, 2020 below and as the last page of Exhibit D.

### The Official News Journal of Fire Island
**fireislandnews.com**

51. Defendants are purposefully using Plaintiff's FIRE ISLAND NEWS® Marks in Defendants' on-line advertisements, website headings and webpage headings without the consent of Plaintiff such as the previously described above "Fire Island News | The Exclusive | The Original https://fireisland.com/fire-island-news." See the last page of Exhibit D. Plaintiff attaches a true and correct copy of the Bing search for "fire island news" downloaded on and dated August 4, 2020 as the last page of Exhibit D.

52. Defendants are using Plaintiff's FIRE ISLAND NEWS common law trademarks, FIRE ISLAND NEWS® Marks and the *FIRE ISLAND NEWS* trade name in the Defendants' web addresses and HTML software coding of Defendants' websites and webpages with the bad faith intent to deceive the viewing public that they are viewing a website associated with the *FIRE ISLAND NEWS* as shown in the on-line search results and html codes in Exhibits C and D.

13

53. Defendants have been and are using Plaintiff's FIRE ISLAND NEWS common law trademarks, FIRE ISLAND NEWS® Marks and *FIRE ISLAND NEWS* trade name in Defendants' domain names, website HTML software coding with the bad faith intent to confuse the viewing public through internet searches and redirect the viewing public and advertisers from the *FIRE ISLAND NEWS* to the Defendants website and/or webpage web addresses for "Fire Island News & More," "The Official News Journal of Fire Island" and/or the *Fire Island Tide*.

54. As a result of the above, Plaintiff sent a second enforcement letter to the Defendants on August 10, 2020 demanding that Defendants cease the unauthorized use of Plaintiff's FIRE ISLAND NEWS Marks. A true and correct copy of the enforcement letter of August 10, 2020 is attached in Exhibit C, last page. Defendant Mr. Capo acknowledged receipt via email to Plaintiff's attorney of the enforcement letter of August 10, 2020. Plaintiff is aware that as August 19, 2020 Defendants have revised the "INFORMATION CENTER" menu selectable item from "FIRE ISLAND NEWS" to "NEWS" on the Defendant's website located at http://FIREISLAND.COM (See Exhibit D, second and third pages).

55. The Defendants are not related to or affiliated with the Plaintiff in any way and Defendants have not sought a license or authorization from Plaintiff for any of the acts described herein.

56. Defendants' infringement of Plaintiff's FIRE ISLAND NEW common law trademarks and FIRE ISLAND NEWS® Marks is an unlawful attempt to undermine the reputation of Plaintiff, deceptively redirect the public to Defendants and deceptively turn Plaintiff's advertisers to the Defendants and unjustly enrich Defendants.

57. Defendants' unauthorized acts described herein in part have caused and will continue to cause irreparable damage to Plaintiff and Plaintiff's *FIRE ISLAND NEWS* business and goodwill unless restrained by this Court.

58. Based upon Plaintiff's prior communications with Defendants as evidenced by the facts and circumstances alleged above, Defendants have intentionally and willfully violated Plaintiff's FIRE ISLAND NEWS common law trademarks and FIRE ISLAND NEWS® Marks.

59. Based upon Plaintiff's prior communications with Defendants as evidenced by the facts and circumstances alleged above, Defendants have intentionally and willfully violated Plaintiff's rights to the FIRE ISLAND NEWS common law trademarks, FIRE ISLAND NEWS® Marks and *FIRE ISLAND NEWS* trade name for the goods of paper newspapers and services that include internet-based digital newspapers and are using the FIRE ISLAND NEWS Domain Names to further the Defendants violation of Plaintiff's rights.

**COUNT 1**
**Trademark Infringement**
**under**
**the Lanham Act 15 U.S.C. §1114**

60. Plaintiff repeats and incorporates herein by reference each of the foregoing allegations.

61. Defendants' use of Plaintiff's FIRE ISLAND NEWS® Marks constitutes knowing, deliberate and willful infringement of Plaintiff's trademarks under 15 U.S.C. §1114.

62. Defendants' use of Plaintiff's registered trademarks is likely to cause confusion, cause mistake and/or deceive as to the affiliation, connection or association between Defendant and Plaintiff and/or as to Plaintiff's sponsorship or approval of Defendants' goods, services and/or commercial activities.

63. As a result of Defendants' infringement, Plaintiff is entitled to injunctive relief and is also entitled to recover Defendants' profits, Plaintiff's non-duplicative actual damages, enhanced profits and damages, and costs and reasonable attorney fees under 15 U.S.C. §§1114, 1116 and 1117.

**COUNT II**
**Unfair Competition and False Designation of Origin**
**under**
**the Lanham Act 15 U.S.C. §1125(a)**

64. Plaintiff repeats and incorporates herein by reference each of the foregoing allegations.

65. Defendants' use of Plaintiff's FIRE ISLAND NEWS common law trademarks and FIRE ISLAND NEWS® Marks constitutes a false designation of origin under Section 43(a) of the Lanham Act 15 U.S.C. §1125.

66. Defendants' use of the Plaintiff's FIRE ISLAND NEWS common law trademarks and FIRE ISLAND NEWS® Marks is likely to cause confusion, cause mistake and/or deceive as to the affiliation, connection or association between Defendant and Plaintiff, and/or as to Plaintiff's sponsorship or approval of Defendants' goods, services and/or commercial activities.

67. Defendants' use of the Plaintiff's FIRE ISLAND NEWS common law trademarks and FIRE ISLAND NEWS® Marks is likely to cause confusion, cause mistake and/or deceive as to the affiliation, connection or association between Defendant and Plaintiff, and/or as to Plaintiff's sponsorship or approval of Defendants' goods, services and/or commercial activities.

68. Defendants' aforesaid conduct has been undertaken knowingly, willfully and in bad faith.

69. As a result of Defendants' infringement, Plaintiff is entitled to injunctive relief and is also entitled to recover Defendants' profits, Plaintiff's non-duplicative actual damages, enhanced

profits and damages, and costs and reasonable attorney fees under 15 U.S.C. §§1114, 1116 and 1117.

**COUNT III**
**Cyberpiracy Prevention**
**under**
**the Lanham Act 15 U.S.C. §1125(d)**

70. Plaintiff repeats and incorporates herein by reference each of the foregoing allegations.

71. Defendants' actions as alleged herein constitute cyberpiracy under the Lanham Act, 15 U.S.C. §1125(d).

72. Defendants' acquired Plaintiff's FIREISLANDNEWS.COM and THEFIREISLANDNEWS.COM domain names (the "FIRE ISLAND NEWS Domain Names") in bad faith knowing of the Plaintiff's earlier in time assertion of superior rights to the FIRE ISLAND NEWS Domain Names based on the long-standing use in commerce of Plaintiff's *FIRE ISLAND NEWS* trade name and FIRE ISLAND NEWS distinctive common law trademarks and Defendants have purposefully used thereafter with knowledge of and in continued bad faith intent the FIRE ISLAND NEWS Domain Names and other web addresses to associate the Defendants' printed and digital newspaper services and goods with Plaintiff's printed and digital newspaper services and goods using the *FIRE ISLAND NEWS* trade name, FIRE ISLAND NEWS distinctive common law trademarks and FIRE ISLAND NEWS® Marks.

73. The Plaintiff's FIRE ISLAND NEWS common law trademarks were distinctive at the time the FIREISLANDNEWS.COM and THEFIREISLANDNEWS.COM domain names were first registered by the Defendants' predecessors and the Plaintiff's FIRE ISLAND NEWS common law trademarks were distinctive at the time the FIREISLANDNEWS.COM and

THEFIREISLANDNEWS.COM domain names were registered by the Defendant SHF Commerce, LLC.

74. Defendants have used and/or are using web addresses that include fireislandnews.com/?edition_id=481eda60-f356-11ea-bfa8-0cc47a0d164b#/, FIREISLANDNEWS.COM, FIREISLAND.COM/FIRE-ISLAND-NEWS/ and FIREISLANDNEWS.COM/#/ that are confusingly similar to Plaintiff's FIRE ISLAND NEWS common law trademarks, FIRE ISLAND NEWS® Marks and *FIRE ISLAND NEWS* trade name and incorporate the exact words of Plaintiff's FIRE ISLAND NEWS common law trademarks, FIRE ISLAND NEWS® Marks and *FIRE ISLAND NEWS* trade name.

75. Defendants' acquisition and use of the infringing FIRE ISLAND NEWS Domain Names (FIREISLANDNEWS.COM and THEFIREISLANDNEWS.COM) in web addresses is likely to cause consumers to believe erroneously that Defendants' website is sponsored, approved, or endorsed by, or otherwise affiliated with Plaintiff.

76. Defendants possess bad faith and seek to profit from the public's association of the FIRE ISLAND NEWS Domain Names with the *FIRE ISLAND NEWS* printed and digital newspapers. Defendants' bad faith intent is evidenced by the Defendants' use of the FIRE ISLAND NEWS common law trademarks, FIRE ISLAND NEWS® Marks and the *FIRE ISLAND NEWS* trade name in connection with the Defendants' printed and digital newspapers when the Defendants know the Plaintiff has superior right rights to the use of the FIRE ISLAND NEWS common law trademarks, FIRE ISLAND NEWS® Marks and *FIRE ISLAND NEWS* trade name; Defendants' predecessors "parked" and did not use the FIRE ISLAND NEWS Domain Names in commerce for news services or goods for at least the preceding ten (10) years; Defendant SHF Commerce, LLC admitted its intent to use the FIRE ISLAND NEWS Domain

Names to compete with the *FIRE ISLAND NEWS*; and the Defendants' acquisition of the FIRE ISLAND NEWS Domain Names was in bad faith because Defendants knew or should have known the FIRE ISLAND NEWS Domain Names are confusing similar to Plaintiff's FIRE ISLAND NEWS common law trademarks and *FIRE ISLAND NEWS* trade name and Defendants nonetheless have used the FIRE ISLAND NEWS Domain Names in web addresses and advertisements for news services for Fire Island and Great South Bay region.

77. Defendants are "parking" and are not using the domain name FIREISLANDNEWS.COM as a web address for a website.

78. Defendants are "parking" and are not using the domain name THEFIREISLANDNEWS.COM as a web address for a website.

79. As a direct and proximate result of Defendants' intentional acts as alleged herein, Plaintiff has been injured and/or will continue to be injured in an amount presently unknown and to be determined at the time of trial.

80. Defendants have acted and/or continue to act intentionally, willfully and with full knowledge of Plaintiff's rights. This case is exceptional within the meaning of 15 U.S.C. §1117 and Plaintiff seeks in the alternative statutory damages for the Defendants' establishment of a counterfeit *FIRE ISLAND NEWS* internet-based newspaper website and/or webpages.

**COUNT IV**
**Common Law**
**Trademark Infringement and Unfair Competition**

81. Plaintiff repeats and incorporates herein by reference each of the foregoing allegations.

82. Defendants' use of Plaintiff's common law FIRE ISLAND NEWS trademarks constitute common law trademark infringement and unfair competition with Plaintiff under the common law of the State of New York.

83. Defendants' use of the Plaintiff's common law FIRE ISLAND NEWS trademarks is likely to cause confusion, cause mistake and/or deceive as to the affiliation, connection or association between Defendant and Plaintiff, and/or as to Plaintiff's sponsorship or approval of Defendants' goods, services and/or commercial activities.

84. Defendants' use of Plaintiff's trademarks have caused, and will continue to cause unless enjoined, substantial injury and irreparable injury to the goodwill and reputation for quality associated with the Plaintiff's FIRE ISLAND NEWS common law trademarks.

### COUNT V
### Unlawful Deceptive Acts and Practices
### under
### New York General Business Law § 349

85. Plaintiff repeats and incorporates herein by reference each of the foregoing allegations.

86. Defendants have been using and are continuing to deceptively use Plaintiff's *FIRE ISLAND NEWS* trade name, FIRE ISLAND NEWS common law trademarks and FIRE ISLAND NEWS® Marks in advertising through the use of internet domain names, internet web addresses, website titles, headings and subheadings to include menu items and internet search terms such as ad words/metadata to promote the Defendants websites, services and products directed to the viewing public so as to deceive and mislead consumers into believing that Defendant's newspaper related goods and services are part of, associated with, and/or licensed or approved by Plaintiff.

87. Defendants' use of the *FIRE ISLAND NEWS* trade name, FIRE ISLAND NEWS common law trademarks and FIRE ISLAND NEWS® Marks is materially misleading to consumers in that it deceptively and falsely suggests and implies that Defendants and their services and products are prepared by, approved by and affiliated with the *FIRE ISLAND NEWS* that is historically well known and has a higher standard of original reporting, photography, design and quality associated with its printed and internet based newspaper products.

88. Defendants' misleading, deceptive use of the *FIRE ISLAND NEWS* trade name, FIRE ISLAND NEWS common law trademarks and FIRE ISLAND NEWS® Marks is and has been likely to create, and upon information and belief, is continuing to create confusion and deception amount consumers as to whether there is an affiliation, connection, or association between Defendants and Plaintiff, and their respective services, products and commercial activities, thereby damaging and diluting the *FIRE ISLAND NEWS* trade name, FIRE ISLAND NEWS common law trademarks and FIRE ISLAND NEWS® Marks.

89. For the foregoing reasons, Defendants' on going deceptive, misleading use of Plaintiff's trademark constitutes a violation of Section 349 of the New York General Business Law and has caused and unless enjoined will continue to cause substantial and irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law, including substantial and irreparable injury to the goodwill and reputation for quality associated with the FIRE ISLAND NEWS® Marks.

90. As a result of Defendants' conduct, Plaintiff is entitled to injunctive relief and is also entitled to recover actual damages, enhanced damages, punitive damages, treble damages and costs and reasonable attorney fees.

## COUNT VI
### Trademark Infringement

**under**
## New York General Business Law § 133

91. Plaintiff repeats and incorporates herein by reference each of the foregoing allegations.

92. Defendants' use of Plaintiff's *FIRE ISLAND NEWS* trade name constitutes a violation of Section 133 of the New York General Business Law by the Defendants' intent to deceive and mislead the internet viewing public through the Defendants' ongoing purposeful use of Plaintiff's *FIRE ISLAND NEWS* trade name in Defendants' advertisements, internet domain names, web addresses, website titles and/or webpage titles, HTML software code as ad words and meta data and printed publications to deceive and mislead the searching and viewing public for the benefit of the Defendants and/or deceive and mislead the internet viewing pubic as to a connection with Plaintiff's *FIRE ISLAND NEWS* trade name, and deceive the viewing public as to the internet address of Plaintiff's website.

93. Defendants' use of the Plaintiff's *FIRE ISLAND NEWS* trade name is likely to cause confusion, cause mistake and/or deceive as to the affiliation, connection or association between Defendants newspaper related goods and services and Plaintiff and/or as to Plaintiff's *FIRE ISLAND NEWS* being a sponsor or approving of Defendants' goods, services and/or commercial activities.

94. Defendants' on going use of Plaintiff's *FIRE ISLAND NEWS* trade name has caused and unless enjoined will continue to cause substantial and irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law, including substantial and irreparable injury to the goodwill and reputation for quality associated with the *FIRE ISLAND NEWS* trade name.

95. Defendants aforesaid conduct has been undertaken knowingly, willfully and in bad faith.

96. As a result of Defendants' conduct, Plaintiff is entitled to injunctive relief enjoining Defendants' conduct as described above.

## COUNT VII
### Injury to Business Reputation; Dilution
### under
### New York General Business Law § 360-L

97. Plaintiff repeats and incorporates herein by reference each of the foregoing allegations.

98. Defendants' use of Plaintiff's trademark constitutes a violation of Section 360-L of the New York General Business Law.

99. Defendants' use of the *FIRE ISLAND NEWS* trade name, FIRE ISLAND NEWS common law trademarks and FIRE ISLAND NEWS® Marks are likely to injure Plaintiff's business reputation and dilute the distinctive quality of Plaintiff's *FIRE ISLAND NEWS* trade name, FIRE ISLAND NEWS common law trademarks and FIRE ISLAND NEWS® Marks through acts of unfair competition that deceive the internet searching or internet viewing public or Plaintiff's advertisers by substituting Defendants reduced quality of news reporting in "Fire Island News & More," "The Official News Journal of Fire Island" and/or the "Fire Island Tide" located at FIREISLANDNEWS.COM/#/ and FIREISLAND.COM/FIRE-ISLAND-NEWS/, respectively and both web addresses using *FIRE ISLAND NEWS* in their web addresses, HTML code ad words/metadata, thereby eroding the viewing public and Plaintiff's advertisers identification of the FIRE ISLAND NEWS® Marks with Plaintiff and by lessening the capacity of the FIRE ISLAND NEWS® Marks to identify and distinguish Plaintiff's services and goods.

100. Defendants' ongoing use of Plaintiff's FIRE ISLAND NEWS Marks, FIRE ISLAND NEWS common law trademarks and *FIRE ISLAND NEWS* trade name has caused and unless enjoined will continue to cause substantial and irreparable injury to Plaintiff for which

Plaintiff has no adequate remedy at law, including substantial and irreparable injury to the goodwill and reputation for quality associated with the *FIRE ISLAND NEWS* trade name, FIRE ISLAND NEWS common law trademarks and FIRE ISLAND NEWS® Marks and *FIRE ISLAND NEWS* trade name.

101. Defendants' aforesaid conduct has been undertaken knowingly, willfully and in bad faith.

102. As a result of Defendants' conduct, Plaintiff is entitled to injunctive relief enjoining Defendants' conduct as described above.

**COUNT VIII**
**Declaratory Judgment**
**that**
**Plaintiff's FIRE ISLAND NEWS Trademark is Distinctive**
**and**
**Defendants have no Common Law Rights in the FIRE ISLAND NEWS Name or Mark**

103. Plaintiff repeats and incorporates herein by reference each of the foregoing allegations.

104. A declaration is appropriate and necessary at this time to affirm Plaintiff's common law rights in the FIRE ISLAND NEWS Marks and to prevent further trademark infringement and unfair competition by Defendants.

105. Plaintiff FIRE ISLAND NEWS INC. and its predecessors have used the *FIRE ISLAND NEWS* trade name, FIRE ISLAND NEWS common law trademarks in interstate commerce since at least as early as 1959, establishing Plaintiff as the owner of common law and distinctive rights to FIRE ISLAND NEWS. Plaintiff has established use of FIRE ISLAND NEWS® Marks in interstate commerce associated with Fire Island, New York that is and has been a nationally and internationally known beach resort destination.

106. Plaintiff's continuous and substantially exclusive use of the FIRE ISLAND NEWS® Marks and *FIRE ISLAND NEWS* trade name and FIRE ISLAND NEWS common law trademarks since on or before 1959 have established the *FIRE ISLAND NEWS* as the senior user of the FIRE ISLAND NEWS® Marks, FIRE ISLAND NEWS common law trademarks and *FIRE ISLAND NEWS* trade name.

107. Defendants' use of the *FIRE ISLAND NEWS* trade name, FIRE ISLAND NEWS common law trademarks and FIRE ISLAND NEWS® Marks is likely to continue to cause confusion, mistake and/or deceive as to the affiliation, connection or association between Defendant and Plaintiff's FIRE ISLAND NEWS INC. and/or as to Plaintiff's sponsorship or approval of Defendants' services, goods and/or commercial activities.

108. Accordingly, Plaintiff FIRE ISLAND NEWS INC., as senior user of the FIRE ISLAND NEWS® Marks is entitled to a Declaratory Judgment that Plaintiff's FIRE ISLAND NEWS® registered trademarks have acquired distinctiveness.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment against Defendants as follows:

A. Defendants have:

1. Willfully infringed Plaintiff's FIRE ISLAND NEWS® Marks in violation of 15 U.S.C. §1114; and

2. Willfully engaged in unfair competition and/or used false designation of origin in violation of 15 U.S.C. §1125(a);

3. Willfully engaged in cybersquatting and/or cyber piracy in violation of 15 U.S.C. §1125(d);

25

4. Willfully infringed Plaintiff's trademarks and engaged in unfair competition in violation of the common law of New York;

5. Willfully committed deceptive acts in violation of Section 349 of the New York General Business Law;

6. Willfully committed acts with the intent to deceive or mislead in violation of Section 133 of the New York General Business Law; and

7. Willfully diluted Plaintiff's trademarks in violation of Section 360 of the New York General Business Law.

B. An injunction prohibiting Defendants and each of their agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert therewith from continuing the Defendants' ongoing infringement, false designation of origin, unfair competition, and dilution of Plaintiff's FIRE ISLAND NEWS® Marks, FIRE ISLAND NEWS common law trademarks and *FIRE ISLAND NEWS* trade name including providing, offering to provide, publishing or advertising news or news related services and/or selling, offering to sell, distributing or advertising goods using Plaintiff's FIRE ISLAND NEWS® Marks, FIRE ISLAND NEWS common law trademarks and/or *FIRE ISLAND NEWS* trade name.

C. An order directing the Defendants to terminate all uses of Plaintiff's FIRE ISLAND NEWS® Marks, FIRE ISLAND NEWS common law trademarks and *FIRE ISLAND NEWS* trade name in any publication of news in any form to include advertisements, printed publications, electronic based news services such as for example newsletters transmitted via electronic mail, Uniform Resource Locators (URLs) and/or web addresses for services such as, but not limited to Defendants' publications located at http://FIREISLANDNEWS.COM, http://fireislandnews.com/?edition_id=481eda60-f356-11ea-bfa8-0cc47a0d164b#/,

http://FIREISLANDNEWS.COM/x/, http://THEFIREISLANDNEWS.COM and
http://FIREISLAND.COM/FIRE-ISLAND-NEWS and to destroy all advertising materials.

D. An award of Defendant's non-duplicative profits, Plaintiff's actual damages,
enhanced profits and damages, treble damages, punitive damages, costs and reasonable attorney
fees for Defendants' trademark infringements and acts of unfair competition and unfair business
practices.

E. A Declaration that Plaintiff is the owner, senior user and has exclusive rights to the
FIRE ISLAND NEWS common law trademarks, FIRE ISLAND NEWS® Marks and *FIRE
ISLAND NEWS* as a trade name and for the Defendants to transfer the rights to the domain names
FIREISLANDNEWS.COM and THEFIREISLANDNEWS.COM to Plaintiff.

F. A Declaration that Defendants have no common law rights in Plaintiff's FIRE
ISLAND NEWS® Marks.

G. Such other and further relief as this Court deems just and proper.

Dated: Bay Shore, New York
        September 13, 2020

                                Respectfully submitted,

                        By  _Harold G. Furlow_
                            Harold G. Furlow, Esq.
                            Attorney for Plaintiff
                            260 West Main Street, Suite 10
                            Bay Shore, New York 11706
                            O: 631-581-6700,
                            Fax: 631-581-6710
                            Harold_Furlow@hotmail.com

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff FIRE ISLAND

NEWS INC. hereby demands trial by jury on all issues raised by the Complaint.

Dated:  Bay Shore, New York
        September 13, 2020

By                                   

             Harold G. Furlow, Esq.
             Attorney for Plaintiff
             260 West Main Street, Suite 10
             Bay Shore, New York 11706
             631-581-6700
             631-581-6710
             Harold_Furlow@hotmail.com